# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

ANGELA L. LATTEA and
GREGORY W. LATTEA,

                Plaintiffs,

v.                                        CIVIL ACTION NO. 3:19-0375

VANDERBILT MORTGAGE & FINANCE, INC. and
CMH HOMES, INC.,
d/b/a Oakwood Homes Nitro, WV,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Presently pending before the Court are four motions that address a variety of intertwined legal issues. The first motion, filed by Defendants Vanderbilt Mortgage & Finance, Inc. and CMH Homes, Inc., is styled a "Motion to Dismiss for Plaintiffs' Lack of Standing." *Mot. to Dismiss*, ECF No. 6. The second motion is also filed by Defendants, and is styled a "Motion to Compel Arbitration and Stay Remaining Nonarbitrable Claims." *Mot. to Compel*, ECF No. 8. The third motion, again filed by Defendants, is a "Motion to Refer Case to Bankruptcy Court." *Mot. to Refer*, ECF No. 29. The fourth and final motion is filed by Plaintiffs Angela and Gregory Lattea, and is styled a "Motion to Withdraw (or Dispense with) Reference." *Mot. to Withdraw*, ECF No. 43. For the reasons set forth below, the Court **GRANTS** the third motion, **DENIES** the fourth motion, and **REFERS** this action to United States Bankruptcy Court for the Southern District of West Virginia and orders it **REMOVED** from the docket. The remaining motions are accordingly **DENIED AS MOOT**.

# I. BACKGROUND

This case originates in Plaintiffs Gregory and Angela Lattea's decision to purchase a mobile home in summer 2018. *Am. Compl.*, ECF No. 17, at ¶¶ 2, 5. Upon visiting the Oakwood Homes lot in Nitro, West Virginia, Plaintiffs elected to purchase a used doublewide home. *Id.* at ¶ 6. A salesperson represented that he would sell the home to Plaintiffs and "secure a loan for the purchase of the lot upon which it would be situated for a total of $63,000.00" *Id.* at ¶ 8. Plaintiffs consummated the purchase of the home and land on September 4, 2018, signing relevant financing documents with Defendant Vanderbilt Mortgage & Finance, Inc. and executing a $10,000 down payment. *Id.* at ¶¶ 13–14.

Over the course of the following months, Plaintiffs began receiving documents related to the purchase of their home that reflected differing loan amounts and sales prices. *Id.* at ¶ 15. On October 24, 2018, "Plaintiffs were directed to sign other loan documents and [a] deed of trust, containing a multiplicity of costs previously not disclosed to Plaintiffs." *Id.* at ¶ 16. After executing these documents, the "total loan amount in the transaction was $109,749.91, which Vanderbilt financed at a []10.560% rate, producing a monthly payment of $1,043.46." *Id.* at ¶ 22. Despite these escalating costs, Plaintiffs took possession of their home in November 2018. *Id.* at ¶ 23. They discovered a laundry list of safety and cosmetic defects with the home at this point, including water damage, a hole in the roof, and collapsing insulation. *Id.* at ¶ 24.

On April 8, 2019,[1] Plaintiffs initiated the instant action in the Circuit Court of Putnam County and raised state law tort claims for fraud, unconscionable inducement, illegal transaction, and breach of warranty stemming from the purchase of their home.[2] *See generally id.* Four days

---

[1] Counsel avers that he mailed the Complaint to the circuit court on April 4, 2019. *See Mot. to Withdraw*, at 1.

[2] Plaintiffs filed an Amended Complaint on July 11, 2019, adding a claim for violation of

before filing the instant suit, however, Plaintiffs initiated a separate action in the United States Bankruptcy Court for the Southern District of West Virginia by filing a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. *See In re Lattea*, No. 3:19-bk-30130 (Bankr. S.D.W. Va.) (filed Apr. 4, 2019). Plaintiffs listed five creditors on their bankruptcy schedules, and the bankruptcy court appointed a trustee to represent the Lattea estate. *Mot. to Refer*, at 2. The largest asset listed as part of their estate is a claim against Defendant Vanderbilt for "unlawful lending"—the case that is currently pending before this Court—to which they have assigned an "unknown" value. *See Ex. A*, ECF No. 20-1, at 17. Of this unspecified value, Plaintiffs claim that $51,329 is exempt from their estate. *Id.*

This simultaneous bankruptcy proceeding accounts for some (though by no means all) of the procedural confusion surrounding this case. On May 13, 2019, Defendants timely removed this action from state court. *Notice of Removal*, ECF No. 1. On June 6, 2019, Defendants filed two motions: a motion to dismiss for lack of standing, and in the alternative, a motion to compel arbitration on certain claims. *Mot. to Dismiss*, at 1; *Mot. to Compel*, at 1. Before the Court reviewed the completed briefing on either motion, Defendants filed their motion to refer this case to the bankruptcy court. *Mot. to Refer*, at 1. Defendants argue that the instant dispute is "related to" to Plaintiffs' bankruptcy proceedings, and should be referred to the bankruptcy court pursuant to Local Rule of Civil Procedure 83.13. Plaintiffs understandably disagree, and contend that their tort claims are independent of their petition for relief under Chapter 7. On August 21, 2019, Plaintiffs filed a motion in this case and their bankruptcy case seeking to withdraw or dispense with the automatic reference "to the extent . . . necessary." *See Mot. to Withdraw*, at 1. These cross-cutting issues have been fully briefed, and are ripe for resolution.

---

the federal Truth-in-Lending Act. *Am. Compl.*, at ¶¶ 4–50.

## II. LEGAL STANDARD

Federal law provides that district courts "shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or *related to* cases under Title 11."[3] 28 U.S.C. § 1334(b) (emphasis added). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1002 n. 11 (4th Cir. 1986) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). This relatively broad definition of matters "related to" bankruptcy is not boundless; abstract concerns about judicial economy and shared facts "do not in and of themselves suffice to make [an action] 'related to' [a] bankruptcy." *Wise v. Travelers Indem. Co.*, 192 F. Supp. 2d 506, 516 (N.D.W. Va. 2002). Nevertheless, the Supreme Court has observed that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995). As such, "the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings." *Id.* The Fourth Circuit Court of Appeals has since distilled this proposition further, holding that "a civil case is related to bankruptcy if the outcome of [the civil] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *New Horizon of NY LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000).

---

[3] Such actions may be referred to bankruptcy courts, which are "authorized to enter orders and judgments on all core bankruptcy matters and to submit proposed findings and recommendations to [the corresponding district court] on all non-core matters." *In re O'Brien*, 414 B.R. 92, 97 (S.D.W. Va. 2009).

Pursuant to these standards, this District's Local Rule of Civil Procedure 83.13 relies on 28 U.S.C. § 157(a) to provide that "all cases under Title 11, and all proceedings arising under Title 11 or arising in or related to a case under Title 11, are referred to the Bankruptcy Court for disposition." Where a case is not automatically referred to the bankruptcy court, the district court will consider whether an action is "related to" an ongoing bankruptcy proceeding. *See*, *e.g.*, *U.S. Bancorp Equip. Fin., Inc. v. Edward's Transp., Inc.*, No. 2:05-0137, 2005 WL 6083461, at *4 (S.D.W. Va. Aug. 9, 2005). Where a case meets the "related to" threshold, district courts have the discretion to refer—or to decline to refer—that case to the bankruptcy court. *Id.* (reasoning that "in view of . . . finding" that case was "related to" bankruptcy proceeding, "the court is vested with discretion to refer this matter").

Once made, a reference to bankruptcy court may be withdrawn "for cause shown." 28 U.S.C. § 157(a). Though neither Congress nor the Fourth Circuit Court of Appeals has yet clarified the "practical requirements for that malleable two word phrase," *In re Johnson*, No. 3:17-mc-180, 2018 WL 2033297, at *3 (S.D.W. Va. May 1, 2018), guidance is found in the six-factor test that courts in this District routinely employ in considering whether to withdraw a reference to bankruptcy court that has already been entered: "(1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy law; (3) the promotion of judicial economy; (4) the efficient use of the parties' resources; (5) the reduction of forum shopping; and (6) the preservation of the right to a jury trial." *In re Albertson*, 535 B.R. 662, 667 (S.D.W. Va. 2015) (citation omitted). With this legal framework in mind, the Court turns to a consideration of the case *sub judice*.

### III. DISCUSSION

Courts in the Southern District of West Virginia have employed different tests to determine whether to refer an action *to* bankruptcy court and whether to withdraw an action *from* bankruptcy

court. As Defendants' and Plaintiffs' motions implicate both categories, the Court will undertake separate analyses to determine whether referral is warranted and, if so, whether the tests courts employ to determine if withdrawal is appropriate similarly supports referral.

**A. Motion to Refer to Bankruptcy Court**

In considering Defendants' motion, the Court must first determine if Plaintiffs' claims are "related to" their ongoing bankruptcy proceedings. If the answer is yes, the Court will consider the merits of exercising its discretion to refer those claims to bankruptcy court. In the instant case, the Court concludes that referral to bankruptcy court is justified.

**1. "Related To"**

The test for whether a claim is "related to" the outcome of bankruptcy proceedings is, at heart, quite forgiving. Where a civil case "could conceivably have *any* effect on the state being administered in bankruptcy," it meets the "related to" threshold." *New Horizon of NY LLC*, 231 F.3d at 151 (emphasis added). For this reason, the Court's analysis is relatively straightforward. It is true that Plaintiffs' claims all stem from the allegedly fraudulent nature of the mobile home sale. Yet it is also true that "Plaintiffs' litigation is the only putative asset of their bankruptcy estate that they claim can be liquidated and used to provide for the estate's creditors." *Mot. to Refer*, at 2. Perhaps most importantly, Plaintiffs do not only seek damages in their suit; as Defendants note, "Plaintiffs' causes of action also seek to impact, diminish, or nullify the same financing that is at issue in their" bankruptcy dispute. *Id.* Courts in this District have determined that claims are "related to" bankruptcy proceedings in circumstances more attenuated than these. *See*, *e.g.*, *U.S. Bancorp Equip. Fin., Inc.*, 2005 WL 6083461, at *4 (Copenhaver, J.) (finding that action between assignor and lessor was "related to" assignee's bankruptcy); *In re Albertson*, 535 B.R. at 667 (Goodwin, J.) (finding that action between trustee and debtor's former co-counsel in personal

injury case was "related to" debtor's bankruptcy). Put simply, the outcome of the claims pending in this Court will directly affect Plaintiffs' bankruptcy case and they are accordingly "related to" it.

### 2. Merits of Referral

Having concluded that Plaintiffs' pending claims are "related to" their ongoing bankruptcy proceedings, the Court is tasked with determining whether to exercise its discretion and refer this action to bankruptcy court. Plaintiffs argue that they are entitled to a jury trial on their claims, which would be unavailable in the bankruptcy court absent their consent.[4] *See Mem. in Resp. to Mot. to Refer*, ECF No. 44, at 3–4. Plaintiffs are, of course, correct as a matter of law. "Bankruptcy judges are not authorized to conduct jury trials," and "where the Seventh Amendment provides the right to a jury trial . . . it must take place in the district court." *In re Stansbury Poplar Place, Inc.*, 13 F.3d 122, 128 (4th Cir. 1993). Nevertheless, the fact that "bankruptcy judges are not authorized to conduct jury trials does not mean that the . . . district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pretrial conferences, and other matters short of the jury selection and trial." *Id.* Applying this reasoning in a subsequent case, Judge Copenhaver determined that a plaintiff-debtor's eventual right to a jury trial did not outweigh the fact that the parties were already before the bankruptcy court in a closely related matter and had accumulated an extensive record in that proceeding. *U.S. Bancorp Equip. Fin., Inc.*, 2005 WL 6083461, at *5. He reasoned that "[t]hese two factors indicate the bankruptcy court has invested significant time and effort into the case and should be given the opportunity to superintend all proceedings affecting the estate." *Id.* Moreover, it was apparent that "the bankruptcy court [was]

---

[4] Defendants disagree, *see generally Mot. to Compel*, but for the purposes of this analysis the Court will assume that Plaintiffs are entitled to a jury trial on their claims.

best positioned to supervise discovery, conduct any necessary pretrial conferences or hearings, and any other matters short of jury selection and trial." *Id.*

The Court sees no reason to depart from this sound reasoning in the instant case. The parties are currently before the bankruptcy court in a case that has generated over eighty docket entries and has spanned eight months. The bankruptcy court is evidently already invested in this case, and will be well-equipped to manage Plaintiffs' tort claims before trial. If Plaintiffs' claims proceed to trial, they are naturally free to move for withdrawal of reference again at that point. The Court is accordingly inclined to exercise its discretion to refer this action to the bankruptcy court for further proceedings.

**B. Motion to Withdraw Reference**

As noted *supra*, courts consider six factors in determining whether to withdraw a reference from bankruptcy court: "(1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy law; (3) the promotion of judicial economy; (4) the efficient use of the parties' resources; (5) the reduction of forum shopping; and (6) the preservation of the right to a jury trial." *In re Albertson*, 535 B.R. at 667 (citation omitted). An examination of each factor in turn leads to the Court to conclude that withdrawing the reference to bankruptcy court is not warranted here.

"The most important factor" in considering whether to withdraw a reference to bankruptcy court "is whether the case presents a core or non-core proceeding." *Id.* (citing *In re Coe-Truman Techs., Inc.*, 214 B.R. 183, 187 (N.D. Ill. 1997). "Simply because [a] proceeding presents questions of state law does not necessarily mean that the proceeding is 'non-core' or otherwise beyond the jurisdiction of the bankruptcy courts." *In re Poplar Run Five Ltd. P'ship*, 192 B.R. 848, 856–57 (Bankr. E.D. Va. 1995). Instead, "[t]he dispositive issue . . . is the centrality of the proceedings to

the bankruptcy case." *In re Albertson*, 535 B.R. at 667 (citing *In re Sys. Eng'g & Energy Mgmt. Assocs., Inc.*, 252 B.R. 635, 642 (Bankr. E.D. Va. 2000)). Of course, "[t]he distinction between core and non-core issues is not always clear, especially in cases where state-law claims are precipitated by the financial dealings of a bankrupt debtor." *In re O'Brien*, 414 B.R. 92, 98 (S.D.W. Va. 2009). For this reason, courts may assume that claims are non-core for the purposes of their analysis without deciding the actual status of a set of claims. *See In re Pinson*, No. 2:15-mc-00095, 2015 WL 6122077, at *2 (S.D.W. Va. Oct. 2, 2015) (reasoning that case "should remain with the bankruptcy court regardless of whether the proceedings are core or non-core"). The Court will do the same in this case, while also reiterating its earlier finding that Plaintiffs' claims are "related to" their bankruptcy case. With this assumption in mind, the Court turns to the remaining factors.

The Court's analysis of the second factor is uncomplicated. While Plaintiffs' claims are not unique to bankruptcy law, Defendants convincingly argue that "Plaintiffs' causes of action are essentially defenses to Vanderbilt's positions" in the bankruptcy proceeding. *Resp. in Opp'n to Mot. to Withdraw*, ECF No. 45, at 7. The bankruptcy court will be well-suited to determine how Plaintiffs' claims interact with their ongoing bankruptcy case. As such, this factor weighs in favor of denying withdrawal.

The third factor—promotion of judicial economy—similarly favors denying withdrawal. Even if the Court were to withdraw the reference, the bankruptcy court would still be forced to resolve Defendants' related bankruptcy claims. Withdrawal would therefore involve redundant pretrial proceedings on related issues in two separate courts. It follows that the interests of judicial economy will be best served by declining to withdraw the reference to bankruptcy court.

The Court's analysis of the fourth factor follows a similar path. Requiring the parties to litigate related matters in separate courts will only lead to greater expenditures. While the Court

recognizes that the bankruptcy court's resolution of non-core claims is not final—and could therefore lead to further litigation in this Court—this possibility is insufficient to render withdrawal a more efficient course of action.

While the Court hesitates to attach disproportionate weight to the fifth factor, it does recognize that Plaintiffs' decision to file their bankruptcy and related torts claims in separate courts at nearly the same time could give rise to an inference of forum shopping. Though the Court does not believe that Plaintiffs are acting in any sort of bad faith, their own motions make clear their preference to avoid disposition of their claims in the bankruptcy court. Insofar as denying withdrawal will preclude even the possibility of forum shopping, this factor weighs in favor of denial.

Finally, the Court considers whether Plaintiffs' right to a jury trial will be impacted by maintaining the reference. At the outset, the Court acknowledges that the parties hotly contest whether Plaintiffs have a right to a jury trial on many of their claims in the first place. *See*, *e.g.*, *Mot. to Compel.* However, assuming Plaintiffs are entitled to a jury trial, it is firmly established that bankruptcy courts may conduct pretrial matters without impacting a party's right to an eventual jury trial. *See In re Stansbury Poplar Place, Inc.*, 13 F.3d at 128. As such, this factor does not impact the Court's analysis.

In sum, regardless of whether Plaintiffs' claims are core or non-core, the remaining factors counsel in favor of denying withdrawal. This is especially true given the related nature of Plaintiffs' pending claims, as well as the unexplained absence of the trustee from this action. Insofar as "allowing the bankruptcy court to handle pretrial matters capitalizes on the bankruptcy court's familiarity with the proceedings[,] . . . ensures that judicial resources are not wasted, and

alleviates the risk of forum shopping," *In re Albertson*, 535 B.R. at 670–71, withdrawing the reference to bankruptcy court is not warranted here.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion, ECF No. 29, **DENIES** Plaintiffs' motion, ECF No. 43, and **DENIES AS MOOT** the remaining motions, ECF Nos. 6, 8. The Court accordingly **REFERS** this action to the United States Bankruptcy Court for the Southern District of West Virginia for further proceedings and orders it **REMOVED** from the docket.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

        ENTER:    January 8, 2020

        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE